UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DEIRDRE M. CUNNINGHAM,

                **Plaintiff,**

v.

                18-CV-463

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                **Defendant.**

## DECISION AND ORDER

Plaintiff Deirdre Cunningham brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of Acting Commissioner of Social Security (the "Commissioner"), which denied her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Act. Dkt. No. 1. This Court has jurisdiction over this action under 42 U.S.C. § 405(g) and the parties have consented to the disposition of this case by a United States magistrate judge pursuant to 28 U.S.C. § 636(c). Dkt. No. 20.

Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Dkt. Nos. 12, 17. For the reasons set forth below, the plaintiff's motion is granted, and the Commissioner's motion is denied.

## BACKGROUND

On October 30, 2014, the plaintiff protectively filed applications for DIB and SSI with the Social Security Administration ("SSA") alleging disability since October

1

30, 2014, due to "mental health issues." Tr.[1] 297. On April 10, 2015, the plaintiff's claims were denied by the SSA at the initial level. Tr. 119-132. On July 21, 2017, the plaintiff appeared with her attorney and testified before Administrative Law Judge, Andrew Niedrick ("the ALJ"). Tr. 35-74. During the hearing, the plaintiff amended her onset date by two years, from October 30, 2014, to October 31, 2016.[2] Tr. 63. On August 18, 2017, the ALJ issued a decision finding the plaintiff was not disabled within the meaning of the Act. Tr. 14-33. Plaintiff timely requested review of the ALJ's decision, which the Appeals Council denied on March 8, 2018. Tr. 1-7. Thereafter, the plaintiff commenced this action seeking review of the Commissioner's final decision. Dkt. No. 1.

## **LEGAL STANDARD**

I.    **District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

---

[1] References to "Tr." are to the administrative record in this matter. Dkt No. 8.
[2] During the administrative hearing the plaintiff testified that she worked during 2015 and 2016 but stopped due to drug use and pain in her knees. Tr. 62-63.

2

(quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

## II. Disability Determination

An ALJ must follow a five-step process to determine whether an individual is disabled under the Act. *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's

3

residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments. See 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform the alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. See Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); see also 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ's decision analyzed the plaintiff's claim for benefits under the process described above. First, the ALJ found the plaintiff met insured status requirements of the SSA through December 31, 2017. Tr. 19. At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity since October 31, 2016, the (amended) alleged onset date. Id. At step two, the ALJ found the plaintiff has the following severe impairments: bilateral osteoarthritis of the knees, carpal tunnel syndrome of the right hand, asthma, chronic obstructive pulmonary disease, obesity,

affective disorder, and substance addiction disorder. *Id.* The ALJ also found Plaintiff's hypothyroidism and hypertension were non-severe impairments. Tr. 20. At step three, the ALJ found that the plaintiff's impairments, alone or in combination, did not meet or medically equal any listings impairment. Tr. 20.

Next, the ALJ determined the plaintiff retained the RFC to perform light work[3] with additional limitations. Tr. 21-22. Specifically, she must be able to stand for five minutes after sitting for twenty-five minutes or sit for five minutes after standing for twenty-five minutes but can continue working in either position. Tr. 22. Further, she may occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs but cannot climb ladders, ropes or scaffolds. *Id.* She can frequently handle and finger with her right dominant hand, but not constantly; is limited to occasional exposure to dust, fumes odors, and pulmonary irritants; and can perform simple, routine, and repetitive tasks. *Id.*

At step four, the ALJ relied on the VE's testimony and found that the plaintiff was unable to perform her past relevant work as a "Home Health Care Aide" (DOT #354.377-014: semi-skilled work with a Specific Vocational Preparation ("SVP") level of 3, generally and actually performed at a medium exertional level); and "Certified

---

[3] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567

5

Nurse Assistant" (DOT #355.674-014, semi-skilled work, SVP 4, generally and actually performed at a medium exertional level). Tr. 27. At step five, the ALJ considered the plaintiff's age (52 on the amended alleged disability onset date); high school education; ability to communicate in English; work experience; RFC; and concluded based on the VE's testimony that the plaintiff was capable of performing other work that existed in significant numbers in the national economy. Tr. 27. Specifically, the ALJ found the plaintiff could perform the following jobs: "Linen Grader" (DOT #361.687-022, unskilled, light, SVP 2 work); "Cashier" (DOT #211.462-010, unskilled, light, SVP 2 work); and "Marker" (DOT #207.685-014, light unskilled (SVP 2) work). Tr. 28. Accordingly, the ALJ found the plaintiff was not disabled from October 31, 2016 through August 18, 2017. *Id.*

II. Analysis

Plaintiff argues that remand is warranted where the ALJ erred by: (1) relying on his own lay judgment in finding the plaintiff capable of performing light work; (2) failing to fully evaluate Dr. Dao's treating source opinion; (3) and by failing to fill a gap in the record where there is no opinion from a treating source regarding the plaintiff's mental functioning. Dkt. No. 12, at 16. The Commissioner contends the ALJ's decision is supported by substantial evidence and should be affirmed. Dkt. No. 17, at 13. This Court finds that remand is warranted where the ALJ erred by relying on his

own lay judgment in finding the plaintiff capable of performing light work for the reasons discussed herein.[4]

**RFC Determination**

Plaintiff argues the ALJ erred in determining that she be afforded five-minute breaks every twenty-five minutes to switch positions from sitting to standing and vice versa, where none of the record medical opinions address her capacity for sitting and standing. Dkt. No. 12, at 16. This Court agrees.

RFC is defined as "what an individual can still do despite [their] limitations." *Desmond v. Astrue*, No. 11-CV-0818 (VEB), 2012 WL 6648625, at *5 (N.D.N.Y. Dec. 20, 2012) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). To determine a claimant's RFC "the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis." *Id.* (citing 20 C.F.R. § 404.1545(a)); 20 C.F.R. § 416.945(a). "An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations." *Id.* (citation omitted).

"[A]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical

---

[4] Because this Court finds that remand is warranted and further factfinding is required, it does not address the plaintiff's remaining argument that there is no opinion from a treating source regarding the plaintiff's mental functioning.

7

advisor's assessment is not supported by substantial evidence." *Wilson v. Colvin*, No. 13-CV-6286P, 2015WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (citation omitted). However, "[a]lthough the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [i]s entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 Fed. App'x. 53, 56 (2d Cir. 2013) (citation omitted) (summary order); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (citation omitted).

The plaintiff relies on *Cosnyka v. Colvin*, 576 Fed. App'x. 43, 46 (2d Cir. 2014), to argue that the sit/stand limitation in the RFC assessment is based on "the ALJ's own surmise." Dkt. No. 12, at 17. In *Cosnyka*, the ALJ credited an orthopedic examiner's opinion that the claimant would require "regular comfort breaks," which the ALJ translated into an hourly six-minute break limitation within the claimant's RFC. *Cosnyka*, 576 Fed. App'x. at 46. The Second Circuit Court of Appeals found that remand was appropriate because the ALJ's "six-minute" interpretation was not supported by the record (including medical evidence and the claimant's testimony) and the formulation was crucial to the VE's conclusion that there were jobs the claimant could perform. *Id.*

Here, *none* of the medical opinions in the record discuss the plaintiff's capacity for sitting and standing nor mention the need for breaks. Although an ALJ may

8

assess RFC limitations that do not precisely align with any medical opinion, the limitations must have some support in the record. *See Davis v. Colvin*, No. 15-CV-6695P, 2017 WL 745866, at *11 (W.D.N.Y. Feb 27, 2017) (holding that the ALJ did not err by assessing a one-hour standing limitation that did not precisely align with any medical opinion where the claimant's daily activities, treatment history, and a consultative examiner's evaluation supported the limitation). Although this Court recognizes that "where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a common-sense judgment about functional capacity even without a physician's assessment," this is not such a case. *Walker v. Astrue*, 08-CV-0828(A)(M), 2010 WL 2629832, at *7 (W.D.N.Y. June 11, 2010) (quotations and citations omitted).

During her administrative hearing, Plaintiff testified that she suffered from significant knee pain due to her bilateral osteoarthritis of the knees. Tr. 55. She stated that she has "no cartilage" and described her knees as "bone on bone." *Id.* The plaintiff rated her knee pain at a level 7 (1-10 scale) on a good day and 9-9.5 on a bad day. Tr. 57. She also testified that she takes Ibuprofen daily for pain and has received cortisone injections into her knees since March 2017, which provide temporary relief from her knee pain. Tr. 56.

In his decision, the ALJ noted that the plaintiff was treated throughout the relevant period at Community Health Center where she saw several different nurse practitioners and physician's assistants under the guidance of her primary physician,

Tinh T. Dao, M.D. ("Dr. Dao"). Tr. 23. Plaintiff first complained of "achy" bilateral knee pain when climbing up steps, upon examination by Christine Divita, RPAC ("PA Divita"), in February 2012. Tr. 412. X-rays of the plaintiff's knees showed osteoarthritic knee changes more pronounced on the right. Tr. 479. In April 2012, the plaintiff reported daily bilateral knee pain when alternating from sitting to standing. PA Divita prescribed Voltaren gel and referred the plaintiff to orthopedic surgery and physical therapy. Tr. 417. A year-and-a-half later in October 2014, the plaintiff was examined for worsening bilateral knee pain, especially with movement, but she stated that the pain improved with rest and Voltaren gel. Tr. 453. Examination notes indicated noted joint overuse and obesity as factors contributing to Plaintiff's knee pain and encouraged weight loss in addition to prescription Diclofenac Sodium Tablets. Tr. 455.

During a consultative examination in March 2015, Plaintiff reported to Honbiao Liu, M.D. ("Dr. Liu") that she suffered from arthritis in her knees with 7 out of 10 pain, requiring her to change positions every five minutes while sitting or standing. Tr. 669. Dr. Liu noted Plaintiff's knees had full range of motion with no swelling or effusion of the joints but observed that she had difficulty rising from a chair. Tr. 669-70. Dr. Liu ultimately opined that Plaintiff had moderate limitations with prolonged walking, bending, and kneeling; mild to moderate limitation for lifting, carrying, and fine manipulations with bilateral hands to zip, button, and tie; and should avoid dust and other irritating factors to limit asthma attacks. Tr. 671. The ALJ accorded the opinion "some weight," noting that Dr. Lui's suggested limitations were consistent with the plaintiff's arthritis in her knees but also found that the opinion "does not point to limitations so severe as to

10

preclude employment within the light residual functional capacity" where "musculoskeletal findings . . . were stable, except for limping gait." Tr. 25. Dr. Liu did not address the plaintiff's capacity for sitting and/or standing during the course of a standard eight-hour workday within a five-day workweek.

In February 2016, the plaintiff was examined again by Dr. Dao for bilateral knee pain from arthritis and was prescribed Ibuprofen and Tylenol. Tr. 703. In January 2017, Dr. Dao authored a medical source statement identifying the plaintiff's treatment for chronic bilateral knee pain and stating that the plaintiff was able to work full-time, "according to her skill," with a reference to a prior referral letter that he prepared in 2015 for the plaintiff to obtain a functional capacity evaluation from a consultative examiner. Tr. 715. The ALJ accorded the opinion "great weight" reasoning that Dr. Dao's statement was supported by unremarkable physical findings during the plaintiff's follow-up visits in 2016. Tr. 26.

Here, the plaintiff argues that the ALJ also failed to fully consider Dr. Dao's opinion where the ALJ omitted a subsequent opinion rendered in May 2017, opining that the plaintiff is severely limited in her ability to walk due to permanent and severe osteoarthritis of the knees. Dkt. No. 12, at 18, 21. The Commissioner contends that the ALJ was free to reject the opinion where it was a "disability assessment," offered in connection with obtaining a handicapped parking permit and was inconsistent with the doctor's treatment notes. Dkt. No. 17, at 15. An ALJ who elects to adopt only portions of a medical opinion must explain his or her decision to reject remaining portions. *See*

11

*Younes v. Colvin*, 2015 WL 1524417, *8 (N.D.N.Y. 2015) (although an ALJ is free to credit only a portion of a medical opinion, "when doing so smacks of 'cherry picking' of evidence supporting a finding while rejecting contrary evidence from the same source, an ALJ must have sound reason for weighting portions of the same-source opinions differently"). In this case, despite according "great weight" to Dr. Dao's opinion that the plaintiff was able to work full-time according to her skill, the ALJ completely ignored the doctor's subsequent opinion that the plaintiff is severely limited in her ability to walk due to permanent and severe arthritis of the knees. Accordingly, on remand the Commissioner should consider Dr. Dao's May 2017 opinion in determining the plaintiff's RFC and delineate which portions of the opinion will be incorporated into his RFC finding, and which will not be included. *See Allen v. Comm'r of Soc. Sec.*, 2012 WL 4033711, *9 (N.D.N.Y. 2012) ("[b]ecause the ALJ failed to explain why portions of [the nurse practitioner's and doctor's] medical source statements were not adopted, the [c]ourt finds that the ALJ did not apply the correct legal standard in determining [p]laintiff's RFC assessment").

In June 2017, one month before her administrative hearing, Plaintiff was evaluated by Paul Lapoint, D.O. ("Dr. Lapoint") at Buffalo Orthopedic Group, LLC for "severe right and left knee pain" from an "acute flare-up of her arthritic symptoms." Tr. 744. Examination notes also reflected "diffuse tenderness over the joint lines," "stiffness with range of motion," and "pain with weightbearing." *Id.* Dr. Lapoint noted the plaintiff reported she could not walk or stand for any prolonged period after sitting for an extended period of time and reviewed the plaintiff's X-rays of both knees, observing

12

diffuse tricompartmental osteoarthritis, right greater than left. Tr. 745. Dr. Lapoint administered bilateral knee injections of Triamcinolone and Lidocaine; prescribed a daily dose of Mobic to alleviate pain and swelling from arthritis; and opined Plaintiff was 100 percent temporarily disabled while recovering from her arthritic condition. Tr. 745. The ALJ accorded Dr. Lapoint's opinion "limited weight," reasoning that opinions on disability are reserved to the Commissioner and noting the doctor's examination notes that demonstrated the plaintiff was able to ambulate and had only minor effusion with no calf tenderness or swelling. Tr. 26. The medical records that the ALJ cites in support of his RFC assessment do not speak to the specific functional limitations at issue.

This Court is unable to ascertain how the ALJ determined that the plaintiff should be afforded five-minute breaks every twenty-five minutes to change positions from sitting to standing and vice versa, and why this particular duration would permit the plaintiff to complete forty hours of light work per week. *Cosnyka*, 576 Fed. App'x. at 46. In light of the non-adversarial nature of benefits proceedings, where there is a gap in the record, the ALJ must affirmatively develop evidence to fill it. *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). Accordingly, this Court finds the ALJ's highly specific RFC finding lacks the requisite support from the record and that this matter should be remanded for the ALJ to properly identify a medical basis and/or basis in the record supporting the additional sit/stand limitation into the plaintiff's RFC.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 12) is GRANTED to the extent it seeks remand. Defendant's Motion for Judgment on the Pleadings (Dkt. No. 17) is DENIED. The Clerk of Court is directed to close this case.

**SO ORDERED.**

DATED:   Buffalo, New York
September 3, 2019

<u>*s/ H. Kenneth Schroeder, Jr.*</u>
**H. KENNETH SCHROEDER, JR.
United States Magistrate Judge**